**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
SCOTT CAWTHON,                                   :
                                                 :
              Plaintiff,                          :          22-CV-3015 (JGK) (OTW)
                                                 :
              -against-                           :          **REPORT & RECOMMENDATION TO THE**
                                                 :          **HON. JOHN G. KOELTL**
QINBOJING,                                       :
                                                 :
              Defendant.                          :
------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

I.    **INTRODUCTION**

  Scott Cawthon ("**Plaintiff**") brought this action for copyright infringement against

Qinbojing ("**Defendant**") under the Copyright Act, 17 U.S.C § 501. (ECF 1). Plaintiff is the creator

and author of *Five Nights at Freddy's* ("**FNAF**"), a series of video games and novels. Plaintiff

owns the intellectual property arising from the franchise and alleges that Defendant unlawfully

sold infringing products on Amazon. (ECF 1 at ¶¶ 23–25). Defendant failed to appear and

defend in this action. Accordingly, the Honorable John G. Koeltl ordered that Plaintiff was

entitled to default judgment against Defendant and referred the matter to me for an inquest on

damages and any other provisions of an appropriate judgment. (ECF Nos. 30–31).

  Upon review of the record and Plaintiff's submissions in support of his request for

damages (ECF 38), the Court respectfully recommends that a default judgment be entered

awarding Plaintiff: (1) **$25,000** in statutory damages; (2) **$10,809.78** in attorneys' fees; (3) **$402**

in costs; and (3) **post-judgment interest** consistent with 28 U.S.C. §1961. The Court also

recommends that Plaintiff's request for pre-judgment interest be denied.

## II.    BACKGROUND

### A.    Factual Background[1]

Plaintiff is the creator, author, and intellectual property owner of FNAF, a survival horror video game series. The first installment of the series was released in August 2014. (ECF 1 at ¶ 11). The franchise now includes approximately a dozen games, which have been purchased and downloaded by millions worldwide. (ECF 1 at ¶¶ 12–14). Plaintiff owns over two hundred registered copyrights related to the FNAF franchise, including copyrights to the following unique characters: Baby, Foxy the Pirate (Funtime Version), Freddy Fazbear (Funtime Version), Bidybab, and Ballora (collectively, the "**Copyrights**"). (ECF Nos. 1-2; 1-3; 1-4; 1-5; 1-6). Plaintiff licenses the FNAF characters through his licensing entity, Scottgames, LLC, ("**Scottgames**") for use in merchandise products. (ECF 1 at ¶ 17). The entire FNAF licensing portfolio has produced millions of dollars in merchandise sales at retail stores. (ECF 1 at ¶ 18). The authorized license program includes licenses for "adult and children's apparel depicting the characters." (ECF 1 at ¶ 19).

Defendant is an Amazon seller residing in Shandong, China, that sells unauthorized apparel that "copy, embody, or constitute derivative works of, the Copyrights" (the "**Infringing Products**").[2] (ECF 1 at ¶¶ 23–25). Defendant is not an authorized licensee of Plaintiff, nor has it

---

[1] As Defendant has defaulted, the facts are drawn from Plaintiff's complaint and accepted as true for the purposes of this motion, except as to damages. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2004) ("[It is an] ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party.").

[2] The Infringing Product is identified as a "Kids 3D Print Five Nights at Freddy's Hoodie Sweatshirt Funny FNAF Hoodie with Pocket Jacket" on Amazon.

paid Plaintiff royalties or requested Plaintiff's permission for commercial copyright use. (ECF 1 at ¶¶ 28–30).

On March 10, 2022, Plaintiff submitted a notice of infringement (the "**Notice**") to Amazon pursuant to the Digital Millenium Copyright Act ("**DMCA**") requesting that Amazon remove Defendant's Infringing Products from the website. (ECF 1 at ¶ 32); *see* 17 U.S.C. § 1202. Amazon removed the Infringing Products from its platform on that same day. (ECF 1 at ¶ 33). On March 29, 2022, Defendant filed a Counter-Notice (the "**Counter-Notice**"), contesting the removal of the Infringing Products and consenting to "the jurisdiction of any Federal District Court for the judicial district in which Amazon may be found." (ECF 1-1). An Amazon fulfillment center is located within this District at 7 W 34th St, New York, NY 10001. (ECF 1 at ¶ 9). Consequently, the Defendant has affirmatively consented to the jurisdiction of the Court. 17 U.S.C. § 512(g)(3)(D).

### B. Procedural History

Plaintiff initiated this action on April 12, 2022 by filing a complaint (the "**Complaint**"), asserting a copyright infringement claim against Defendant under Sections 106 and 501 of the DMCA. (ECF 1 at ¶¶ 41–42). In the Complaint, Plaintiff requested (1) actual damages and profits, or, in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c) of the DMCA; (2) attorneys' fees and costs in accordance with 17 U.S.C. § 505; (3) injunctive relief; and (4) pre- and post-judgment interest. (ECF 1 at "Prayer for Relief," ¶¶ 1–7).

On January 11, 2023, Plaintiff served Defendant with the Complaint, civil cover sheet, and summons by email at the address that Defendant had provided in the Counter-Notice. (ECF Nos. 17–18). After Defendant failed to appear and respond to the Complaint, the Clerk of the

Court entered a certificate of default on February 17, 2023. (ECF 21). On April 20, 2023, Plaintiff

moved for entry of default judgment against Defendant. (ECF 24). Judge Koeltl issued an order

to show cause directing Defendant to respond by May 19, 2023, where failure to do so would

result in the entry of default judgment.[3] (ECF 28). Plaintiff served Judge Koeltl's May 19 Order

on Defendant, at the same email address, on May 4, 2023. (ECF 29). Defendant again failed to

respond. (ECF 30). On June 2, 2023, Judge Koeltl ordered that Plaintiff was entitled to a default

judgment[4] against Defendant (*id.*) and referred the matter to me for an inquest on damages.

(ECF 31 at 1).

On June 5, 2023, the Court entered a Scheduling Order directing the parties to file

submissions regarding damages, which Order was served on Defendant by email. (ECF Nos. 32,

34). The Order notified the parties that the Court might conduct the damages inquest solely on

the parties' written submissions. (ECF 32 at ¶ 3). Subsequent to a permitted extension (ECF

Nos. 35, 36), Plaintiff filed its damages submission on July 18, 2023. (ECF 38). Defendant was

---

[3] Under Federal Rule of Civil Procedure 55, there is a two-step procedure for obtaining default judgment against a party that fails to plead or defend in an action. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). First, the Clerk of the Court must enter a certificate of default, formally acknowledging that the defendant has admitted liability due to their lack of defense. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). *See* Fed. R. Civ. P. 55(a). Then, if the party fails to appear after the Clerk enters the certificate of default, the Court may enter a default judgment. *See* Fed. R. Civ. P. 55(b).

[4] The decision to grant default judgment is discretionary and depends on whether the allegations against the defaulting party are sufficient to state a cause of action and claim for relief. *See Mickalis Pawn Shop*, 645 F.3d at 137; *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). The factual allegations, taken as true, must establish the defendant's liability as a matter of law. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The decision to grant default judgment is guided by the same factors that apply to a motion to set aside entry of a default: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense. *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 454–55 (2d Cir. 2013); *First Mercury Ins. Co. v. Schnabel Roofing of Long Is., Inc.*, No. 10 Civ. 4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011).

directed to file any opposition by July 28, 2023. (ECF 32). To date, Defendant has not appeared in this action, responded to the Complaint, or otherwise contacted the Court. (*See* Docket).

### III. DISCUSSION

#### A. Jurisdiction

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the federal Copyright Act. Personal jurisdiction over Defendant is also established, as Defendant (1) consented to jurisdiction in the Counter-Notice and (2) was properly served via email with the Court's permission. (ECF Nos. 1-1, 17–18). Venue is proper under 28 U.S.C. § 1391(b)(3).

#### B. Default Judgment

Following the two-step process outlined in Rule 55, the Clerk of the Court entered a certificate of default against Defendant, and Judge Koeltl issued a Default Order confirming that Plaintiff is entitled to a default judgment. Fed. R. Civ. P. 55(a), 55(b); (ECF Nos. 21; 30). Because Defendant has failed to respond to any court proceedings or the damages submissions, despite being properly served, the Court finds that Defendant's default was willful. *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013) (inferring willful default where defendants received actual notice of the complaint and their failure to answer was not due to external factors). Defendant's non-compliance with court orders to appear and defend the action supports the appropriateness of granting default judgment and determining an award of damages to Plaintiff.

**C.  Copyright Infringement**

Plaintiff alleges that Defendant's Infringing Products infringe on his FNAF character

Copyrights. (ECF Nos. 1-2; 1-3; 1-4; 1-5; 1-6). To establish copyright infringement, a plaintiff

must provide evidence of: (1) ownership of a valid copyright, and (2) unauthorized copying of

original elements of the copyrighted work. *Feist Publ'ns*, *Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,

361 (1991). Unauthorized copying can be established through direct evidence of copying or,

absent direct evidence, by demonstrating that Defendant had access to the copyrighted

materials and that the works are substantially similar. *See Jorgensen v. Epic/Sonic Recs.*, 351

F.3d 46, 51 (2d Cir. 2003). A work is substantially similar to a copyrighted work if an "ordinary

observer, unless he set out to detect the disparities, would be disposed to overlook them, and

regard their aesthetic appeal as the same." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 100 (2d Cir.

1999).

Plaintiff has established that Defendant infringed the copyrights. First, Plaintiff has

demonstrated ownership of valid copyrights by submitting registration certificates for the

Copyrights in his Complaint, (ECF Nos. 1-2, 1-3, 1-4, 1-5, 1-6), which establish a *prima facie* case

of copyright infringement. *Jorgensen*, 351 F.3d at 51 ("A certificate of registration from the

United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of

a copyright."). *See also* 17 U.S.C § 410(c). Second, Plaintiff has successfully shown unauthorized

copying of the Copyrights. Plaintiff has provided sufficient evidence to show that Defendant

had access to the copyrighted materials. The FNAF games have been purchased by millions of

people worldwide and the "licensing portfolio has produced millions of dollars" in retail.

(ECF 1 at ¶¶ 14, 18). The FNAF games and related merchandise are available through various

channels and platforms such as Steam, Apple's App Store, the Google Play Store, as well as traditional gaming consoles like PlayStation, Nintendo Switch, and Xbox. (ECF 1 at ¶ 14). The wide dissemination of the Copyrights supports the likelihood that Defendant encountered the copyrighted works. *Cawthon v. Zhousunyijie*, 22-CV-03021 (LJL), 2024 WL 1156073, at *5 (S.D.N.Y. 2024). The Infringing Products also bear a clear resemblance to Plaintiff's Copyrights. A comparison of Plaintiff's Copyrights and Defendant's Infringing Products reveals numerous identical or strikingly similar elements.[5] (ECF 1 at ¶¶ 16-B; 16-C; 16-D; 16-E; 16-F; 26). The replication of these elements, which are central to the overall look and feel of Plaintiff's franchise, constitutes unauthorized copying. Moreover, Defendant explicitly included both "Five Nights at Freddy's" and "FNAF" in the name of the Infringing Products, evidencing Defendant's intention to copy Plaintiff's characters. As Plaintiff has successfully demonstrated both elements of copyright infringement, Defendant is liable for copyright infringement.

### D.  **Damages Calculation**

Having found Defendant liable for copyright infringement, the Court must determine the appropriate damages to which Plaintiff is entitled. Judge Koeltl's entry of a default judgment confirmed Defendant's liability as a matter of law, concluding the litigation. Fed. R. Civ. P. 55(b). Plaintiff is therefore awarded the relief to which he is entitled, as determined by the Court. *Id.* A default judgment does not automatically resolve the issue of

---

[5] Defendant's Infringing Products replicate original elements of Plaintiff's Copyrights, including unique graphical designs, color schemes, and iconography. (ECF 1 at ¶¶ 16-B; 16-C; 16-D; 16-E; 16-F; 26). Any differences between the Copyrights and unauthorized images are slight, such as Defendant's depiction of Baby's hair as completely red, as opposed to the half-orange and half-red version in the copyright. (ECF Nos. 1-2; 1-7). An ordinary observer would likely overlook these minor differences.

damages; the plaintiff must provide evidence substantiating their request. *Dunn v. Advanced Credit Recovery Inc.*, 11-CV-4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. 2012) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

Under 17 U.S.C. § 504, a copyright owner can opt to recover: (1) actual damages; (2) statutory damages, ranging from a minimum of $750 to a maximum of $30,000 for all infringements involved in the action, as the court considers just; or (3) if, the court finds that the infringement was willful, an increased award of up to $150,000. 17 U.S.C. §§ 504(c)(1)–(2). Plaintiff requests, at a minimum, a statutory damages award of $30,000 under § 504(c)(1). Due to the willfulness of Defendant's infringement, however, Plaintiff seeks enhanced statutory damages award of the maximum of $150,000 per infringed work, as authorized by § 504(c)(2).

Given the lack of information regarding actual damages Plaintiff suffered from Defendant's infringement, Plaintiff is eligible for statutory damages. *See Lucerne Textiles*, *Inc. v. H.C.T. Textiles Co.*, 12-CV-5456 (KMW) (AJP), 2013 WL 174226, at *2 (S.D.N.Y. 2013), *rep.& rec. adopted at* 12-CV-5456 (KMW) (AJP), 2013 WL 1234911 (S.D.N.Y. 2013) (collecting cases) (finding "[s]tatutory damages for copyright infringement are available without proof of plaintiff's actual damages or proof of any damages.") (internal quotation marks omitted).

When calculating statutory damages, courts must consider six factors: (1) the infringer's state of mind; (2) the infringer's expenses saved and profits earned; (3) the copyright holder's revenue; (4) the deterrent effect on the infringer and others; (5) the infringer's cooperation in providing evidence regarding the value of the infringing material; and (6) the parties' conduct and attitude. *See Bryant v. Media Right Prods.*, *Inc.*, 603 F.3d 135, 144 (2d Cir. 2010); *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986). Courts in this circuit may also

consider the value of a copyright to inform the statutory damages award. *See Elsevier Inc. v Siew Yee Chew*, 17-CV-6225 (JGK) (GWG), 2019 WL 74606, at *10 (S.D.N.Y. 2019) (inferring that the plaintiffs' copyrights to education materials were valuable because of their "well-known reputations for high quality education content."), *rep & rec. adopted*, 17-CV-6225 (JGK), 2019 WL 10946099 (S.D.N.Y. 2019). I consider each factor in turn below.

### 1. The Infringer's State of Mind

The Court finds that Defendant willfully violated Plaintiff's Copyrights. *Bryant*, 603 F.3d at 144. *See also Howarth v. FORM BIB LLC*, 18-CV-7047 (JPO)(SN), 2020 WL 3441030, at *3 (S.D.N.Y. 2020), *rep. & rec. adopted at* 18-CV-7047 (JPO), 2020 WL 3436685 (S.D.N.Y. 2020). Willfulness in copyright infringement requires either (1) actual knowledge of the infringement or (2) actions reflecting reckless disregard or willful blindness to the copyright holder's rights. *Island Software & Comput. Servs., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005). Such knowledge or disregard indicates greater statutory damages award to discourage wrongful conduct and adequately compensate for injury. *Howarth* 2020 WL 3441030, at *3. Filing false counter notices may establish willfulness under § 504(c). *Cawthon v. Pan Nuan Nuan*, 22-CV-3019 (DLC), 2023 WL 2758435, at *2 (S.D.N.Y. 2023).

Defendant's conduct here evidences willfulness and warrants considering an award of statutory damages above the $750 minimum articulated by the statute. Defendant explicitly labeled the Infringing Products with direct references to FNAF and specific characters from the franchise, (ECF 1-7), indicating Defendant's awareness of the copyrighted material and intentional unauthorized use. Additionally, Defendant acknowledged the infringement by challenging Plaintiff's takedown request with its own Counter Notice, (ECF 1-1), suggesting

Defendant was aware of the violation and persisted regardless. *Cawthon v. Pan Nuan Nuan*, 2023 WL 2758435, at *2 (finding Defendant's Counter-Notice and subsequent default sufficient to establish willfulness" under 17 U.S.C.A. § 504(c)).

## 2. The Expenses Saved and Profits Earned by the Infringer

The second factor is the financial benefits the infringer gained from their unauthorized use of the copyrighted work. Here, the lack of evidence regarding Defendant's monetary gains renders this factor neutral as to an award of statutory damages. Defendant's default has "denied Plaintiff the ability to take fact discovery" and provide evidence regarding the costs saved or profits earned by Defendant. *Spin Master, Inc. v. Amy & Benton Toys & Gifts Co.*, 17-CV-5845 (VSB), 2019 WL 464583, at *6 (S.D.N.Y. 2019). While Defendant's actions—marketing and selling products named with explicit references to FNAF and its characters—do reflect an attempt to profit from Plaintiff's Copyrights, the Court cannot evaluate the actual financial benefit to Defendant.

## 3. The Revenue Lost by the Copyright Holder

The third factor, revenues lost by the plaintiff due to the infringement, does not support increasing the statutory damages award. Courts in this district have deemed an award of increased statutory damages unwarranted "where there is no evidence of actual harm to the plaintiff." *Green v. Akonik Label Grp.* LLC, 19-CV-7492 (PGG) (OTW), 2022 WL 2817311, at *3 (S.D.N.Y. 2022) (collecting single copyright infringement cases awarding $750 to $5,000 in statutory damages where there was no proof supporting actual damages). "[W]hile a plaintiff has the right to elect not to provide evidence of actual damages, courts are free to consider the absence of such evidence in arriving at an award of statutory damages." *Id.*

Plaintiff here has not submitted evidence detailing the lost revenue directly attributable to Defendant's infringement, such as data showing how Plaintiff's sales were affected or showing any specific financial impact resulting from the market presence of the Infringing Products. Such absence weighs against increasing the statutory award. Even if the Infringing Products did divert some sales from Plaintiff's products, Plaintiff has not provided evidence of the damages caused by any such diversion. The Court finds that an award of statutory damages should reflect the lack of information as to Plaintiff's actual damages.

### 4. The Deterrent Effect on the Infringer and Others

The fourth factor, the need to deter the defendant and other potential infringers from committing future copyright violations, favors a greater award of statutory damages because there is evidence that Defendant is a serial infringer. The deterrent effect of statutory damages is particularly significant in cases involving serial infringers or those who continue to infringe despite repeated warnings. *Bass v. Diversity Inc. Media*, 19-CV-2261 (AJN), 2020 WL 2765093, at *4 (S.D.N.Y. 2020).

Defendant filed a Counter-Notice (ECF 1 at ¶ 32) in response to Plaintiff's infringement Notice, demonstrating Defendant's intent to continue infringing Plaintiff's Copyrights even after having received a warning. *See Cawthon v. Zhousunyijie*, 2024 WL 1156073, at *8 (finding that the defendant's submission of a Counter-Notice was "a clear attempt to continue profiting off Plaintiff's Copyrights," supporting a substantial damages award). The heightened risk of serial or repeated infringement here suggests that any award of statutory damages should be substantial enough to achieve the necessary deterrent effect.

### 5. The Infringer's Cooperation in Providing Evidence Regarding the Value of the Infringing Material

The fifth factor, the infringer's cooperation in providing evidence regarding the value of the infringing material, is neutral as applied here. While some courts construe a defendant's default as evidence of non-cooperation, "it is more appropriate to look to whether the defendant has engaged in an effort to conceal the fact or scale of its wrongdoing or to mislead the plaintiff or the court about the existence or scale of counterfeiting." *Spin Master*, 463 F. Supp. 3d at 374. Plaintiff has not provided evidence tending to show that Defendant tried to conceal their wrongdoing or otherwise mislead the Court about the extent of the infringement. Aside from Defendant's default, which this Court does not deem probative, there is no indication that Defendant explicitly refused cooperation.

### 6. The Conduct and Attitudes of the Parties

The sixth factor is the overall conduct and attitude of both the plaintiff and the defendant. Without Plaintiff's provision of information regarding its actual damages, this factor disfavors an excessive award of damages.

Although Defendant has been uncooperative, Plaintiff's conduct and attitude must also be weighed. Plaintiff has demonstrated diligence in protecting his Copyrights by promptly filing the Complaint and seeking legal redress. (ECF 1). However, as discussed above, Plaintiff's submissions in support of requested damages provided evidence only as to Defendant's willfulness and offered no information regarding Plaintiff's lost revenue. (ECF 38). Considering that "[t]o the extent possible, statutory damages should be woven out of the same bolt of cloth as actual damages[,]" Plaintiff's failure to submit adequate evidence in support of his requested statutory damages has frustrated the Court's analysis on the appropriateness of the award

sought. *Bass*, 2020 WL 2765093, at *4 (citing *Seelie v. Original Media Grp. LLC*, 19-CV-5643

(BMC), 2020 WL 136659, at *5 (E.D.N.Y. 2020)). *See also Parsons v. Bong Mines Ent. LLC*, CV 19-

0813 (JMA) (AKT), 2021 WL 931506, at *10 (E.D.N.Y. 2021), *rep. & rec. adopted at* 19-CV-0813

(JMA) (AKT), 2021 WL 930259 (E.D.N.Y. 2021) ("Plaintiff's failure to provide any evidence which

might assist the Court in evaluating the appropriateness of the statutory award sought, such as

her licensing fees history, weighs against a substantial award.").

### 7. Value of the Copyright

I also find that the copyrights are valuable enough to warrant an increased damages

award. Courts in this circuit have also considered the value of a copyright to inform the amount

of statutory damages to award. *See Elsevier Inc.*, 2019 WL 74606, at *10 (inferring that the

plaintiffs' copyrights to education materials were valuable from their "well-known reputations

for high quality education content.").

The FNAF games have been downloaded by millions of people around the world and

have produced millions of dollars in retail sales. The widespread commercial success and

popularity of the franchise leads the Court to find that the Copyrights are valuable enough to

warrant an increased damages award. *Cawthon v. Zhousunyijie*, 2024 WL 1156073, at *9.

***

Courts in this District have recently awarded statutory damages in other, highly similar

copyright infringement actions in the amount of $5,000 per infringed copyright. *See Cawthon v.

Nguyen*, 22-CV-7398 (AS) (SLC), 2024 WL 1557301, at *7 (S.D.N.Y. 2024), *rep. & rec. adopted at*

2024 WL 1555775 (S.D.N.Y. 2024); *Cawthon v. Lishuang*, 22-CV-7381 (JGLC) (SLC), 2024 WL

3813879, at *9 (S.D.N.Y. 2024), *rep. & rec. adopted at* 2024 WL 4200389 (S.D.N.Y. 2024). *But*

*see Cawthon v. Pan Nuan Nuan*, 2023 WL 2758435, at \*3 (awarding $150,000 consequent to a finding a willfulness).

Weighing all six required factors and the value of the copyrights, I find that a statutory damages award of $5,000 per infringed copyright is also appropriate here. Therefore, I recommend a total statutory damages award of **$25,000** representing $5,000 for each of the five infringed copyrights, as a fair and reasonable amount to compensate Plaintiff and deter future infringement.

### E. <u>Attorneys' Fees</u>

Plaintiff seeks $21,619.55 in attorneys' fees pursuant to 17 U.S.C. §§ 505, 512(f), which accounts for courtesy discounts counsel provided to Plaintiff.[6] (ECF 38 at 6). Under 17 U.S.C. § 505, a court may award reasonable attorneys' fees to the prevailing party in a copyright action. When deciding whether to award attorneys' fees under 17 U.S.C. § 505, the court may consider "(1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively reasonable; and (4) compensation and deterrence." *Bryant*, 603 F.3d at 144. Given Defendant's default, and the interest in deterring future copyright infringement, I find that an award of attorneys' fees is warranted. *Farrington v. Jewish Voice Inc.*, 21-CV-1575 (NGG) (AYS), 2022 WL 541645, at \*6 (E.D.N.Y. 2022) (granting an award of attorneys' fees where default judgment was granted against Defendant and infringement was willful).

---

[6] In the alternative, Plaintiff requests the billing amount of $29,175.50 in attorneys' fees. The Court, however, is not in the business of awarding attorneys' fees above the amount actually paid. *F.H. Krear & Co. v. Nineteen Named Trustees*, 801 F. 2d 1250, 1269 (2d. Cir. 1987) (A party is not entitled to an attorneys' fees award "exceeding [the] amount he has actually paid his attorney.").

What constitutes a reasonable fee is committed to the court's discretion. *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998). Courts commonly use the lodestar method to create a "presumptively reasonable fee," by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). A reasonable hourly rate is defined as what a "reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. This rate is informed by "those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Artex Creative Int'l Corp.*, 687 F.Supp.2d at 359 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Once a court determines a reasonable hourly rate, it turns to the reasonableness of the hours billed. This calculation considers whether "a reasonable attorney would have engaged in similar time expenditures" and "should exclude hours that are excessive, redundant, or otherwise . . . unnecessary[.]" *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *Hensley v. Eckerhart*, 461 U.S. 424, 434, (1983). The party seeking an award of attorneys' fees must support their request with time records for each individual involved, including the date of the work performed, the number of hours spent, and a description of the tasks completed. *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983).

1. **Hourly Rate**

Plaintiff has submitted billing records for eleven different timekeepers, reflecting a total of 76.9 hours worked. (ECF Nos. 38 at ¶ 12, 38-1).[7] The requested billing rates are as follows: $675 per hour for one managing attorney; $310 to $625 per hour for one principal attorney; $310 to $605 per hour for three attorneys of counsel; $310 to $525 per hour for two associates; and $225 to $345 per hour for several paralegals. (ECF Nos. 38 at ¶ 12, 38-1).

   a. *Managing Attorneys*

Given their experience, the requested hourly rates for managing attorney Gary D. Nissenbaum (timekeeper GDN), principal attorney Laura J. Magedoff (LJM), and senior counsel Steven L. Procaccini (SP), are consistent with those approved for partners in similar copyright cases within this District. (ECF 38 at 5). *See BMaddox Enterprises LLC v. Oskouie*, 17-CV-1889 (RA) (SLC), 2023 WL 1418049, at *4 (S.D.N.Y. 2023), *rep. & rec. adopted at* 17-CV-1889 (RA) (SLC), 2023 WL 1392075 (S.D.N.Y. 2023) (collecting cases where partner rates ranging from $400 to $750 per hour were deemed reasonable in copyright litigation, reflecting the experience and expertise required for such matters).

   b. *Associates and Counsel*

Courts in this District typically find hourly rates between $200 and $450 reasonable for associates in copyright cases, depending on their experience and role in the litigation. *Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, 13-CV-1526 (RJS), 2020 WL 2848232, at *7 (S.D.N.Y. 2020) (collecting cases); *Bass*, 2020 WL 2765093, at *6 (finding courts in the Southern District of

---

[7] Plaintiff does not tabulate total hours worked in his damages submissions and has left it to the Court to do so.

New York have approved associate rates of $350 in copyright cases). Therefore, I find that the requested rates for associates and counsel Anthony C. Gunst (AG), Ryan Fernandez (RF), and Matthews A. Florez (MF) are unreasonably high. Plaintiff's submissions do not indicate that these lawyers possess specific expertise or experience in copyright infringement. I find that Sudhit Raghupathi's hourly rate of $365 is, however, reasonable.

### c. Paralegals

It is unclear from Plaintiff's submissions which paralegals worked on this matter. Plaintiff's declaration in support of their motion identifies Mardelis Campos (MC), Sarah Hobbi (SH), Kaitlyn Ketterman (KK or IP), and Nikki Schuldt (NSCH) as the paralegals responsible for work on this matter. (ECF 38 at ¶¶ 12(m)–12(p)). The underlying billing records, however, also time entries for another paralegal, Cristina Sanchez (S-PA). (*See generally* ECF 38-1).

As Courts in this District "have generally found hourly rates of $150 to $200 to be reasonable for paralegals in copyright cases," the Court finds that the requested hourly rates of $225 to $345 per hour are too high. *Latin Am. Music Co.*, 2020 WL 2848232, at *7 (collecting cases).

### 2. Hours Spent

Plaintiff billed approximately 77 hours to this case. Under the instant circumstances, that figure is excessive. *See Cawthon v. Zhousunyijie*, 2024 WL 1156073, at *10–11 (finding that 60 hours in a case involving the same plaintiff, the same attorneys, and the same procedural posture, was excessive). "Generally, [t]he time and labor required for seeking a judgment by default . . . based on the defendant's failure to plead or otherwise defend, as well as the level of skill required to perform the legal tasks in connection with it, are . . . *de minimis*." *Samsonite IP*

*Holdings S.ar.l. v. Shenzhen Liangyiyou E-Com. Co.*, 19-CV-2564 (PGG) (DF), 2021 WL 9036273, at *15 (S.D.N.Y. 2021), *rep. & rec. adopted at* 2023 WL 8805645 (internal citations omitted). That should have been the case here.

Plaintiff's billing records show an excessive expenditure of hours. For example, Plaintiff's billing records include excessive time for seemingly straightforward administrative matters, such as transmitting documents to the client. (*E.g.*, ECF 38-1 at 4, 5). There are also extensive hours for legal analysis with no detail provided whatsoever. (*E.g.*, ECF 38-1 at 1, 2, 7). Moreover, Plaintiff contends that "the time and labor expended on this case was increased because of the difficulty and novelty of this matter." (ECF 38 at ¶ 12(a)). Cawthon has advanced the same argument before, in identical terms. *See, E.g.*, *Cawthon v. Nguyen*, 2024 WL 1557301, at 10. Indeed, Plaintiff's damages submissions in this action appear to be nearly identical to submissions in that action. (*Compare* ECF 38 *with Cawthon v. Nguyen,* 22-CV-7398 (AS) (SLC), ECF 28). The law and facts in this action are no longer novel. While there is no prohibition on recycling work product in similar matters in the name of efficiency, that efficiency should be reflected in counsel's billing records. It is not appropriate that counsel should bill—and expect the Court to award—more for repurposed court submissions than the originals. *See Cawthon v. Nguyen*, 2024 WL 1557301, at *9, (reflecting Cawthon's request there for fees for 34 hours of attorney time).

When a court finds that the number of hours that counsel expended on a matter is excessive, the court may forego reviewing the timekeepers' individual time entries and may instead apply an across-the-board percentage reduction in compensable hours. *Malletier v. Artex Creative Intern. Corp.*, 687 F. Supp. 2d 347, 362–63 (S.D.N.Y. 2009)). I find that a 50%

reduction in the attorneys' fees is appropriate here. *See Cawthon v. Zhousunyijie*, 2024 WL 1156073, at *11.

***

Accordingly, I respectfully recommend that Plaintiff be awarded **$10,809.78** in fees, reflecting a 50% global reduction due to the excessive amount of time that counsel billed to this matter.

### 3. Costs

Although Plaintiff's Complaint requests an award including costs, (ECF Nos. 1 at Prayer for Relief, ¶ 5), Plaintiff's damages submissions do not reference any such request for reimbursement (*see* ECF Nos. 25, 38). Indeed, Plaintiff has not submitted any invoices or receipts substantiating any claimed amount, and may be denied costs on those grounds. *See Cawthon v. Lishuang*, 2024 WL 3813879, at *14; *J&J Sports Prods., Inc. v. Fantasy Bar & Rest. Corp.*, 17-CV-5355 (JGK) (DF), 2018 WL 5018065, at *7 (S.D.N.Y. 2018) *rep. & rec. adopted at*, 2018 WL 5016606, at *1 (S.D.N.Y. 2018). The Court may, however, take judicial notice of the filing fees reflected on the docket as support for an award of costs associated with such filings. *See McDermott v. NYFireStore.com Inc.*, 18-CV-10853 (AJN) (SLC), 2021 WL 952455, at *6 (S.D.N.Y. 2021); *Whitehead v. Mix Unit, LLC*, 17-CV-9476 (VSB) (JLC), 2019 WL 384446, at *6 (S.D.N.Y. 2019). Accordingly, I recommend that Plaintiff be awarded costs in the amount of **$402**, the filing fee for the complaint. (*See* ECF No. 1.)

### F. <u>Interest</u>

In the Complaint, Plaintiff requests that the Court award pre-judgment and post-judgment interest for Plaintiff's copyright claims pursuant to 28 U.S.C. § 1961. (ECF 1 at 8-10).

Plaintiff's damages submissions do not provide arguments addressing these requests. (*See* ECF 38).

### 1. Pre-judgment Interest

The Copyright Act does not explicitly address the provision of pre-judgment interest, leaving this decision to the discretion of district courts. *Capitol Recs.*, *Inc. v. MP3tunes*, *LLC*, 07-CV-9931, 2015 WL 13684546, at *4 (S.D.N.Y. 2015) (citing *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 569 (2d Cir. 1994) ("The Copyright Act neither allows nor prohibits an award of pre-judgment interest, and the issue of the permissibility of pre-judgment interest is unresolved in this Circuit.")). Even in cases of willful copyright infringement, some courts in this district have opted not to award pre-judgment interest, reserving it for "exceptional" circumstances. *Richard Feiner & Co. v. Turner Ent. Co.*, 96-CV-1472 (RO), 2004 WL 2710054, at *2 (S.D.N.Y. 2004). Other courts have awarded prejudgment interest as a deterrent against willful infringement. *Broad. Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 661 (S.D.N.Y. 1996).

Plaintiff here requested prejudgment interest in the Complaint (ECF 1 at 10), but did not provide any argument, supporting law, or even mention prejudgment interest in his damages submissions. (*See* ECF 38). I find that Plaintiff has waived his request for prejudgment interest. *Sadowski v. Yeshiva World News,* LLC, 21-CV-7207 (AMD) (MMH), 2023 WL 2707096, at *8 (E.D.N.Y. 2023), *rep. & rec. adopted* at 2023 WL 2742157. Accordingly, I respectfully recommend that pre-judgment interest not be awarded.

### 2. Post-judgment Interest

Plaintiff also seeks an award of post-judgment interest. In this Circuit, an award of post-judgment interest is mandatory on any money judgment in a civil case recovered in a district

court. 28 U.S.C. § 1961; *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004).

Post-judgment interest is calculated from the date of the entry of the judgment, at a rate equal

to the weekly average 1-year constant maturity Treasury yield, as published by the Board of

Governors of the Federal Reserve System, for the calendar week preceding the date of the

judgment. 28 U.S.C. § 1961.

## IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff be awarded the

following:

- **Damages**, pursuant to 17 U.S.C. § 504(c): **$25,000.00**;

- **Attorneys' fees**, pursuant to 17 U.S.C. § 505: **$10,809.78**;

- **Costs**: **$402.00**; and

- **Post-judgment Interest**, from the date of entry of the award, until the date of
  payment, using the federal rate as set forth in 28 U.S.C. § 1961.

## V.    OBJECTIONS

In accordance with 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

fourteen (14) days (including weekends and holidays) from receipt of this Report to file written

objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A

party may respond to any objections within fourteen (14) days after being served. Such

objections, and any responses to objections, shall be addressed to the Honorable John G. Koeltl,

United States District Judge. Any requests for an extension of time for filing objections must be

directed to Judge Koeltl.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 Fb.2d 234, 237–38 (2d Cir. 1983).

Respectfully submitted,


_/s/ Ona T. Wang_____

Dated: October 15, 2024                                **Ona T. Wang**
      New York, New York                           United States Magistrate Judge